We will give each side 15 minutes, and the epilogue can have 5 extra minutes in rebuttal. And please keep your voices up so that we can hear you, and you may begin. Thank you, counsel. May it please the court. My name is Katie Anderson from the Office of the State Appellate Defender, and I represent the appellant Mark Murrell. This court should reverse Murrell's conviction because the evidence at trial did not prove his guilt beyond a reasonable doubt, or the trial court found that all of the witnesses, with the exception of the testifying prosecutor, were unreliable on a regular, consistent basis, Murrell's conviction was based upon prior inconsistent statements that the court found were simultaneously coerced and the linchpin of the State's case, and there was no physical evidence connecting Murrell to the crime. Because the trial court stated that all of the witnesses, with the exception of the prosecutor, were unreliable on a regular, consistent basis, it based Murrell's conviction on the prior inconsistent statements of a witness named Valshay Haynes, more specifically her grand jury testimony and her written statement. The trial court stated that there was no question that Ms. Haynes' statements were coerced, but it also found that her statements were the linchpin of the State's case. In reaching this conclusion, the trial court stated that while it believed that Haynes was coerced, it did not believe that the video recording of the interrogation demonstrated the continual preparation that she would need in order to give a relatively uncontradicted statement to the ASA and to testify in front of the grand jury. In a sufficiency of the evidence challenge, the standard of review is typically when, after viewing the evidence in a light most favorable to the prosecutor, any rational trier of fact could have found the defendant guilty beyond a reasonable doubt. However, the trial court's conclusions regarding the video recording are not entitled to the signature of the grand jury under oath, because the police only read her Tyrone Carter's written statement once, but this conclusion was erroneous as demonstrated by the video recording. The trial court's findings based on testimonial evidence are entitled to great deference, but its findings based on non-testimonial evidence, for example, exhibits like surveillance videos admitted to evidence, are not entitled to any deference. And that's because the trial court actually has the opportunity to see the witnesses testify live in person rather than in court. The trial court's findings based on non-testimonial evidence are not entitled to any deference. However, the trial court's findings based on non-testimonial evidence, exhibits like surveillance videos admitted to evidence, are not entitled to any deference. That is true. We can't view the live testimony of the witness. But the video recording of the interrogation gives us a lot of information about the circumstances under which her pretrial statements were obtained. And that information is very important in terms of coloring the way in which her later testimony is viewed, particularly in a case such as this where we have competing inconsistent statements. You seem to be suggesting that we should give de novo review to the videotape and you would concede we have to give deferential review to the judge's findings based on the live testimony in front of him in the courtroom. But how can we do that when the judge below had to consider everything as a sort of a coherent parade of facts, whether it was live or in video, because Judge Call was, you know, he's there to do one thing, we're here to do something different. That is correct. If we had a case where there was nothing but a video, I think your de novo argument would have a little more strength. In this case though, even though there was live witness testimony, the trial court did state that it did not find, it found that the witnesses were all unreliable on a regular consistent basis. And a conviction can only be sustained upon proof beyond a reasonable doubt, which requires reliable evidence. So we're not exactly in that situation you mentioned, but we are in a situation where the trial court simply didn't find the live testimony credible. And because the conviction must be sustained only upon credible evidence, that puts kind of a heightened importance on this video recording. So are we not in the same posture then as the trial court in reference to the video, such that we would be examining it under a de novo review? They were looking at a video. We looked at a video. Aren't we in the same posture? Regarding the video, we're in a very similar posture. The court's findings in Dixon were a little confusing as to whether when you're looking at a video it should be de novo review or whether it should be manifest rate of the evidence, because the Dixon court at one point said that the trial court's finding based on non-testimonial evidence are not entitled to any deference, but then it went on to clarify that the standard of review for the video recording was manifest rate of the evidence. So it is admittedly a little bit murky as to exactly how we review the video, but it is clear that the conclusions based on the video are just not entitled to the same deference as the live testimony. What makes you think that the video was the linchpin of the trial court's decision? The trial court stated that Ms. Haynes' prior statements were the linchpin of the case, and her prior statements include the video, the written statement, and the grand jury testimony. But the video is important because it shows us the circumstances under which her statement that later appears in the written statement to the ASA and the grand jury testimony, it gives us important information about those circumstances. Because the written statement was taken shortly after the video recording was completed, most likely within a couple hours, and the grand jury testimony was only two days later. And when we take a look at that video, what it shows us is for the first 55 minutes of the video recording, Ms. Haynes' statements mirror her testimony at trial. Where she basically says that Mark Morrell, Tyrone Carter, the victim, and Sam D.S.B. picked her up from her house, they went to the liquor store, they went back to her house, she and Morrell stayed there, Carter was on the porch, everyone else eventually left. And she sticks with that story very consistently. Also, there are indications that this was not the first time that she had spoken to the police, and she had spoken to them several times before, giving them the same story. And while she's repeating the story, she's repeatedly threatened by Detective Porter. He tells her that she's digging her own grave if she sticks to this story. He tells her that she's going to be in bond court the next morning if she keeps giving Morrell an alibi. He threatens that he will charge her with murder, and she'll spend the rest of her life in prison, and that she'll never see her daughter again. Finally, he says, okay, we'll give you one last chance. And that's the point where she agrees to go along with Tyrone Carter's written statement. They do read her Tyrone Carter's written statement pretty much line for line in the video. She also handles a physical copy of that statement. Can you really tell that from the video? I'm sorry, it was line by line? It wasn't they, it was one of the detectives was going through it. Yes, one of the detectives was going through the statement. It took about five minutes, and she does say after the detective reads it to her that that was a lie, but once they tell her she has one last chance, she agrees to go along with it. And the trial court said that it did not find the continual preparation necessary for her to later repeat the statement back to the ASA and at the grand jury. But when you carefully watch the video, it does show subtle coaching by the detectives. For example, every time she says something that is not consistent with Mr. Carter's written statement, the detectives either stop her and ask her another question, or they have her stop and start her story back over at the beginning. So, for example, about 57 minutes and 48 seconds into the first DVD recording, Hayne says that while she was in the car, she heard one gunshot, Morrell got back in the car and she has to be taken home. The evidence of trial proves that the victim was shot twice. So after she says this, Detective Porter stops her and tells her to tell the correct story. She says again that she heard one gunshot. Detective Porter stops her and tells her, no, you need to tell the whole story and has her start the story over again. So at about 59 minutes in, she starts the story all the way over from the beginning again, and when she starts, she says that Sam Giesby was in the car and that there were five people in the car. There's a banging noise on the video. We don't know if that's the detective banging or if it's something from another room. We don't know what the source is, but after she says there are five people in the car, the detective asks her how many people were in the car, and she says four. At this point, the video recording cuts off. It looks like they got to the end of the tape or something. It starts up again very shortly. It does start off, though, with Detective Porter speaking, so we know that there was at least some minor conversation in there. She starts going through her story again about 8 minutes and 25 seconds into the second portion of the video. She states that after Morrell got back in the car, Sam Giesby was in the front seat and she was in the back seat with Tyrone Carter. Detective Porter asks her who got back in the car after the second gunshot. She says Mr. Morrell. At this point, there's a 12-minute gap in the video. When the video resumes, they're talking about a jacket hanging in a closet, so there was some conversation that happened that we're just not aware of. But basically, what this video shows when you watch it closely is it does show... What does a jacket hanging in the closet have to do with the statement that you made before it as something that we're not aware of? It really does not appear to be relevant to the case. I just mentioned it to bring up that they were obviously taught... Clearly, there was a change of topic. There was conversation that we're not aware of taking place during this 12-minute gap in the video. Because when it does start up, they're talking about this jacket that, like you said, doesn't really connect here. Wasn't it the defendant's jacket? I don't recall off the top of my head. I'd have to go back and check. But anyway, the important part about the video, though, is it does show Detective Porter subtly coaching Haynes through her oral statement by stopping her every time she gives a detail that doesn't match Porter's statement. So the trial court's conclusion that the video does not show the detective coaching her on what to say is against the manifest weight of the evidence. Even though he's not feeding it to her line by line, he's still coaching her. And also with this method, by the time they were through with the video-recorded interrogation, she'd had the opportunity to run through the statement several times. Run through the statement several times? I'm not sure what you mean by that. She had repeated the statement that they wanted her to make several times on the video, which gave her more of an opportunity for memorization than if she'd only ran through it once. Wow. Okay. Also, Porter's and Haynes' statements here are not identical. They're inconsistent as to key aspects of what happened. First of all, they are inconsistent as to the presence of this fifth person, Mr. Giesby. Haynes stated repeatedly during her oral statement to the police that he was present, even after she agreed to go along with Carter's statement. However, there is no mention of his presence in either her written statement or her grand jury testimony. And Mr. Giesby does not appear at all in Mr. Carter's pretrial statements. However, both Ms. Haynes and Mr. Carter testified at trial that Mr. Giesby was present. The presence of this fifth person is a significant fact. Their statements are also inconsistent as to motive. In Carter's statement, he stated that the motive for the shooting was that they were fighting over Haynes' presence in the car. And his statement as to motive is a bit odd. He basically said that he was extremely upset that Haynes was present in the car because she was nosy. And he was upset that Murrell called him to hang out and then invited her to join them. So he called Murrell an impolite name. The victim started agreeing with him. They started talking about how Murrell always does this and they didn't want Haynes there. And then at that point, Murrell pulled over, had the victim get out of the car. Even though Carter had kind of started this argument, they got into a physical altercation that resulted in the victim being shot. When Haynes gave her statement, she said that she didn't even remember what they were arguing about and that it was just silly things. So their statements don't gel on this because she most likely would have remembered this argument being about her and her presence in the car. Can you go back a little bit to the videotape of Ms. Haynes? Was a transcript ever made of her video statement? To my knowledge, there was not a transcript made and there was not a transcript in the record. And were any other statements ever produced in discovery by the state? Not to my knowledge. To my knowledge, the only written statements that were produced were Haynes' written statement and there was also the statement of an eyewitness named Gabriel Webb. Who testified? Yes, Gabriel Webb testified, but his testimony didn't really corroborate the testimony of either Haynes or Carter. Gabriel Webb testified that he saw Morell, the victim, and Carter together at a liquor store at approximately 5 p.m. In Carter's prior statement, he also says that he saw them later again at 9 or 10 and that he saw Morell at some point later on in the evening. But in Carter's prior statements, Morell did not even call him that day to get together until about 6.30 p.m. And Morell picked him up, dropped him off so Mr. Carter could complete a drug transaction, and then picked him up again before they went to the liquor store with the victim. So the timeline on those statements is not matching up. Also, the state's brief is a little bit misleading as to Carter's testimony. Under People v. Simpson, a witness must have personal knowledge of the facts contained in his prior inconsistent statement. And a witness can testify as to statements made to him by a defendant, but can't offer his personal opinion as to the meaning of those statements. So a lot of his statements that were included in the state's brief were ruled inadmissible by the trial court. Webb also did disavow his prior statement at trial and said that he made it all up so that the state would drop a drug charge again. So at best, his statement says that he saw three of the people who were allegedly involved together at a liquor store with a timeline that doesn't match up with Carter's prior inconsistent statement or Haines's prior inconsistent statement. Okay, and unfortunately, your 15 minutes has expired, but you do have five minutes to rebuttal. Thank you so much. There are several witnesses that testified at trial and provided statements, grand jury statements and statements given to Maywood police officers. And after viewing all of the evidence in the light and most favorable to the people, this court should affirm the defendant's second degree murder conviction. The people sustain their verdict to prove defendant guilty beyond a reasonable doubt. On January 21st... Our position is that this court should review all the evidence, including the video, in the light and most favorable to the people. And the video should not, it would not be appropriate for this court to review the video de novo. Because as you mentioned previously, the trial court was in a superior position to make such credibility determinations. But how is the trial court in a superior position to review the credibility of a video that we can look at exactly the same way as the trial court? The trial court used this video in conjunction with the witness's live testimony. This isn't a surveillance video like we have in Dixon where the court was able to review this video to determine whether or not someone was holding a gun or a dangerous weapon. This is a video of a witness giving a statement to police officers. And the same witness recanted on the stand at trial. Her credibility was at issue. And the trial court reviewed the video multiple times in order to determine whether her pre-trial or live testimony was true. So this video is unique and different than the video in Dixon. Because the trial did use it in comparison to her live testimony where this court does not have that opportunity. That being said, after this court reviews all of the evidence including the video and the rightness of her vote to the people, they should affirm the conviction because the trial court was reasonable in determining the defendant was guilty of second degree murder. We have not only the pre-trial statements of Ms. Haynes, which was a grand jury statement and the statement signed at the Maryland Police Station. We also have Mr. Carter's police statement that he gave to the police and his grand jury statement. And we have Mr. Webb's pre-trial statement as well. Counsel, what do you make of the court's statement that almost all of the witnesses in this case, maybe with the exception of the state's attorney who actually did testify, were unreliable on a regular consistent basis? You say there are lots of witnesses, but the court says that their testimony is unreliable on a regular consistent basis. Well, we do have three witnesses that recanted their pre-trial statements they recanted on the stand. So they were not reliable in that sense. However, because the trial court, as he specifically notes, he credits the ASA Jamie Santini who testified at trial. ASA Santini was present during Mr. Carter's pre-trial statements, signed statements in the Maryland Police Station, and he was the ASA that conducted the grand jury. ASA Santini also testified that Mr. Carter appeared to be cooperative. So you're saying your whole case relies on Santini's testimony? Sorry, could you repeat that? Are you saying that your whole case relies then on Santini's testimony? No, Your Honor. That's just one piece of it. So because he credits ASA Santini, we can make the inference that he's also crediting Mr. Carter's pre-trial statements, which ASA Santini deemed to be credible and Mr. Carter deemed to be cooperative. Secondly, Ms. Haynes' pre-trial statements, as the judge notes, she was not coached or talked into enough to have been forced to memorize a statement enough to repeat it in front of a grand jury. So Ms. Haynes' grand jury testimony, while it does mirror her pre-trial statement to the Maryland Police, and what we see on the video, that is separate from her video statement. She also testified at trial that she gave her grand jury statement from memory. And even if the statement given on the video is deemed to be coerced, as the trial judge said, because she went home in between, she was outside of any coercive environment, there were no officers at the grand jury, and she testified from memory, the grand jury transcript is still credible evidence that can be used and was used against the defendant. And additionally, Mr. Weck's statement, as Defense Counselor was mentioning, the timeline, while he was not there in the car to see the shooting or hear the gunshots go off, the actual timeline that he gives does line up with the pre-trial statements of the other two witnesses, in the sense that he sees the defendant, Mr. Carter, at a liquor store around 5, Ms. Haynes was not present, and we know, based on Mr. Carter and Ms. Haynes' statements, that they picked her up later around 6.30 or so, and then he sees... There is some jive in between Mr. Webb's statements and the other's timeline. And again, if we, as long as this court views all of the evidence, the way it most favorable to the people, the conviction should be affirmed. The court says, straight out, there is no question that Ms. Haynes was coerced. Yes, Your Honor, and even... We're still not supposed to believe that she was coerced or fed her statement. The video speaks for itself, and even if this court finds that she was coerced in the video, as I said, the remaining evidence is not affected by the statement that she gave in the video. We have her grand jury transcript with Mr. Carter's pre-trial statement and grand jury transcript. We also have ASA Santini's testimony. And even if this court completely discounted the video evidence, the remaining evidence would still be enough to find the defendant guilty of second-degree murder. The video doesn't affect the efficacy of all the other testimony and pre-trial statements given. And importantly, the defendant is not contesting the admissibility of this video and never contested a pre-trial. The defendant concedes in the reply brief that... So you're saying it wasn't hanging over her, that she may never see her child again, that she may go to jail for lengthy periods of time. All of that didn't affect any of the subsequent testimony. As the trial judge noted that she was being questioned as a witness, he says she was definitely coerced, and the people are contesting what the trial judge ruled on it. What is important to focus on is to view it in the light most favorable to the people. So whether or not the trial judge gave it just a little bit of weight, some weight, versus all the weight, we need to respect the credibility determinations of the trial judge. And he specifically said that she did not have the continual preparation required for her to repeat such a statement from memory of the grand jury. Furthermore, he also noted that even in the video she does mention other things like she was afraid and no one was talking with her. Is she the one that brings up her child? Sorry? Is it her that brings up that she has a child in a child custody case? Is she the one that first mentions it in the video? I'm not sure if she brings it up first or if the detectives already knew that, but I know she does bring it up eventually. But again, the trial judge, he did say that there wasn't enough to have it affect her grand jury testimony in a way that would mean that she was continually coached. So how would the, one thing that was, when I was reading these, the briefs and the papers in this case, how would the trial judge know what kind of memory Ms. Haynes had? She could have had, you know, a perfect memory or not. He would never know that. And so for him to make his determination based on the fact that she seemed to seamlessly recant her testimony, you know, consistently, I mean, that, I don't know how he could, and based that on the fact that he didn't think that she would be able to memorize it, that, well, makes the assumption that he thinks that she doesn't have a good memory. The trial court is the credibility determination finder, and whether or not the trial judge determined after viewing the video a second time or more that he determined that she didn't have enough preparation to memorize it or her memory wasn't good enough or whatever, the standard of review is to give deference to his credibility determinations. And even if he didn't articulate how he felt about her memory or her capability of memorizing or not memorizing something, this court must defer to the trial court's credibility determinations when there's a challenge to the sufficiency of the evidence. It's also important to note that the videotape does contain evidence that cuts both ways. The defendant wasn't, the defendant was charged with first degree murder and he was convicted of second degree, and only from the trial judge on his own determining that there was a mitigating factor here to bring it down to second degree. The trial judge noted that because there was evidence of argument and fight that the defendant was only guilty of second degree murder because he was acting under an unreasonable belief of self-defense. And in the videotape, as well as the other pretrial statements from Ms. Haynes and Mr. Carter, those all contain evidence of argument. Nothing at trial, from the medication on the stand, there was nobody that said that the victim and the defendant got in an argument then. So obviously, again, the trial judge was giving weight to those pretrial statements again and that ultimately helps the defendant in receiving a lesser conviction. Additionally, even if this video is coerced, there's no preclusive effect on, the defendant never, he never filed a promotional remedy and didn't make an objection to relevance or that it was overly prejudicial. And even if he did, the remedy here would just be to exclude the videotape and the trial court would have still heard the rest of the evidence. And now, focusing on just... Wasn't the trial court kind of taking it upon himself to go through the video and determine how the impact of any force was? Yes. Do we treat the statements of witnesses different than we do confessions of defendants that are coerced? While there's a lot more case law on coerced confessions from defendants and whether they need corroborating evidence and protections for defendants, there's no case that talks about excluding a witness's coerced statement. And it's clear that the trial judge did take a lot of time and put thought into his determinations. He watched the video multiple times. And based on the statements he gave before he gave the guilty verdict, it's clear that he believed the pre-trial version of events, whether or not it was the version contained in the actual video or her grand jury transcript or Mr. Carter's grand jury, they all were very similar. So even if this video was discounted, the information, the evidence, was contained elsewhere in the record as well. And the trial court determined that that was what, in fact, happened. The defendant shot Terrell Hogger twice with an unreasonable belief for self-defense. With that, we ask that you affirm the defendant's conviction. Thank you. Thank you very much, counsel. Any rebuttal argument? Yes, ma'am. The state is essentially requesting that this court sustain Mr. Morell's conviction on two things. Number one, the pre-trial statements of some of the witnesses. And number two, the testimony of ASA Santini. First of all, as to the pre-trial statements, the state also wants to separate Ms. Haynes' grand jury testimony from her pre-trial statements. But the fact is that Ms. Haynes was still under the coercive influence of the police when she made both the written statement to the ASA and her testimony in front of the grand jury. How does the record demonstrate that she was still under the coercive effect when she was at the grand jury? Well, when you take a look at the video, at the end of the video recording, Detective Porter first tells her to tell the truth when he gives the statement to the ASA. And Ms. Haynes says, everything I just told you all. And he says, yes. So therefore, he's basically telling her to make the same statement to the ASA that he made to the police. Can we look at how that was done? I mean, at that point, there's only one detective in the room, right? And he said, okay, you'll give this to the state's attorney? Yeah, I'll give this to the state's attorney. And throughout the whole thing, he says, you've got to be honest. You've got to tell the truth. I mean, it was very conversant at that point. So how do you take away that coerciveness was still going on at that point? Because immediately before this, they had just threatened her extensively. Also, when you look at the circumstances under which she was taken into custody, she stated that she was in the car with a friend who was driving. The car was pulled over. The police approached the car with the guns drawn, handcuffed her, and took her into custody. And this was on March 30th. And this interrogation is from her trial testimony? Yes. So that was from her trial testimony. So she was taken into custody on March 30th. She makes these statements. The video recording was taken around 4 or 5 p.m. on the 31st. So she's been in custody overnight at this point. And there's some debate about that, isn't there? Whether she was taken home or brought back. I mean, there's inconsistencies about that. It looks like the inconsistencies, based on my reading of the record, were more inconsistencies over how she got home after she gave the written statement to the ASA. She's not in handcuffs or restrained in any way in this room. No, she's not restrained. But she is in the police station, and she does not believe that she is free to leave. Also, there was a... I don't know if that's all right with my mind. But then she says at the end, when we're talking about the end, she goes, you know, I'm really going to be in trouble with my employer. Yes. And he goes, well, I want to text the law. I'll write you something. Right? Help you with your employer. He goes, yeah, write up something about I have a suspended license. So, I mean... But he says that after she agrees to go along with Carter's statement. I was saying that it's still coercive at that point. I'm just, you know. We have, you know, if you're asking us to look at it de novo, we have to look at everything. Okay. Yes, correct. So, also, there was a detective present while she was making this statement to the ASA. So, there was still that officer presence. And then the police picked her up and drove her to the grand jury for her to testify there. And this was all in a very short time frame, regardless of the issues about whether she was taken into custody, whether she spent the night of the 30th at the police station. This all took place in a very short time frame, just a couple days. So, when she testified at the grand jury, it's very reasonable that she's still under the coercive influence of the police versus at trial seven years out where that influence has substantially lessened. What's the time gap between the statement at the police station and the statement to the grand jury? We don't, the statement at the police station, the interrogation was taken, the video starts around a little after 4 p.m. on the 31st, and the grand jury testimony was on Monday, April 2nd. So, there was about maybe three days at the most, the rest of the evening of the 31st, all day on the 1st, and I don't recall the exact time of the testimony on the 2nd. So, in addition, Justice Hall, you made a point earlier about we don't know about the trial court judge making some assumptions about Ms. Haynes' memory. There are other indications in the record that he did not really have a favorable view of Ms. Haynes while he was giving his findings of fact and commenting on her interrogation statement. He notes that while they're watching the video, they are watching Ms. Haynes in her natural habitat, the police station, so it's likely that he does not have a favorable view of her as a witness, and this quite possibly colors his interpretation of her statements at the police station or her ability to memorize Carter's statements. As to the testimony of A.S.A. Santini, he was not present during the interrogation of either Carter or Haynes, and we can't assume that Carter's prior inconsistent statements are credible based upon A.S.A. Santini's testimony. To the contrary, Ms. Haynes' allegations of coercion lend credence to Carter's allegations of coercion. The video recording shows that the police did threaten her and to induce her to make these statements. The trial court found that Ms. Haynes was coerced. Carter made very similar allegations that the police threatened him and told him he thought he was under arrest and that he would get out of charges if he gave the statement that they wanted him to make. So A.S.A. Santini's statements don't lend credibility to Carter's pretrial statements simply because he was not there. When we look at case law, the Illinois Supreme Court has consistently affirmed that coerced statements are unreliable, and because the credibility of a statement later disavowed under oath is highly questionable, review of a conviction based on prior inconsistent statements looks skeptically on a trial court's decisions to rely on such statements to convict. And that's from both Arcos and Reyes, which are both First District cases. Arcos is fairly similar to the case at Barr. In that case, we had a witness who gave prior inconsistent statements, and the court determined that he was not a credible witness. And the Arcos court stated, having first rejected Rosario as a witness who could not be believed, we conclude that the trial court must have looked to the corroborative evidence to support the essential elements of the state's case. This court found the corroboration wanting and overturned the defendant's conviction. In that case, the court also explicitly rejected the use of the autopsy report as corroborative evidence because the autopsy report corroborated how the murder happened, but it shed absolutely no light on who committed it. So the fact that the victim was shot twice, just like in the prior inconsistent statements, doesn't corroborate that's not sufficient corroboration. Well, it's not surprising that in the wide world of jurisprudence you're going to find some cases where this court has overturned a conviction based on over-reliance on the wrong side of inconsistent statements. But don't we also have a doctrine that says that recantations are inherently unreliable? Recantations are inherently unreliable, but also coerced statements are unreliable. And the video here demonstrates that Ms. Hayne's statements were coerced and the trial court also explicitly Was she coerced to make a statement or was she coerced to lie? It appears that she said she was coerced to lie. She insisted she stuck with her first statement that she was not present during the murder. It appears that she likely had several conversations with the police before the interrogation when she stuck with this statement. She stuck with this statement consistently until she was threatened repeatedly by the police, and at which case she said she would go along with Carter's statement. She said she just hadn't told the whole truth until that time. Because there was going back and forth. I mean, there were several stops, liquor store back, liquor store back. So at some point maybe she didn't keep going on the travels. The bottom line, though, is that a conviction can only be sustained upon credible evidence. And when we're trying to decide which statement that the speaker said was a lie is actually a lie, you have a serious question as to whether there is any credible evidence at all upon which to sustain this conviction. When at one point we've said that this version was a lie, at one point we've said that this version was a lie, the trial court said at some point I have to believe she's lying when she said she was lying, the bottom line is that at the end of the day the conviction can only be sustained upon credible evidence. And in this case there simply is not enough credible evidence to prove identity. That's a great description of our bottom line. Is there another question? Thank you, Counselor. Thank you. The case will be taken under advisement.